DONOVAN *v.* NATIONAL BANK OF DETROIT

OPINION OF THE COURT

1. TRUSTS—WILLS—TAXES—EXPENSES—PRINCIPAL AND INCOME.
Conclusion that a testatrix intended some taxes and some expenses to be deducted from income does not negative the possibility that other taxes and other expenses were intended to be charged to principal.

2. TRUSTS—PRINCIPAL AND INCOME ACT.
Trust instrument did not contain a clear expression of contrary intent such as to remove the trust from the operation of the Revised Uniform Principal and Income Act (MCLA § 555.51 *et seq.*).

3. TRUSTS—ADMINISTRATION—EXPENSES—PRINCIPAL AND INCOME.
Generally, courts have directed that the ordinary expenses of the administration of a trust be charged against income, and extraordinary expenses which benefit the remainderman be charged against the principal.

4. TRUSTS—PRINCIPAL AND INCOME ACT—EQUITY—VESTED RIGHTS.
The Revised Uniform Principal and Income Act did not abrogate Michigan equity jurisprudence, nor did it oust any Michigan beneficiary from vested rights.

---

REFERENCES FOR POINTS IN HEADNOTES

[1–3, 5, 6, 9] 54 Am Jur, Trusts §§ 98, 346, 355 *et seq.*
[1–6, 9] Constitutionality of retrospective application of Uniform Principal and Income Act or other statutes relating to ascertainment of principal and income and apportionment of receipts and expenses among life tenants and remaindermen, 69 ALR2d 1137.
[4] 54 Am Jur, Trusts § 102.
[7] 54 Am Jur, Trusts § 356.
Allocation between income and principal of "capital gains" dividend of mutual fund or investment trust or corporation, 98 ALR2d 511.
[8] 57 Am Jur, Wills § 9.
[9] Admissibility of extrinsic evidence upon issue of testamentary intent, 21 ALR2d 319.

5. Trusts—Taxes and Expenses—Administration—Principal and Income Act.

> Taxes and expenses of administration of a trust should be apportioned between income and principal in accordance with the specific provisions of the Revised Uniform Principal and Income Act as most nearly effectuating the presumed intent of the settlor and at the same time making convenient and reasonably certain the administration of trusts in Michigan (MCLA § 555.51 *et seq.*).

Dissenting Opinion

Black, J.

6. Trusts—Taxes and Expenses—Income—Principal—Principal and Income Act.

> *Codicil to a will directing the trustee named therein to (1) "collect the income from the property comprising the trust estate", (2) pay all taxes and incidental expenses of the trust, and (3) remit the net income derived therefrom to a beneficiary clearly directed the trustee to pay all taxes and mentioned expenses from the income and it follows that the terms of The Revised Uniform Principal and Income Act do not apply as the provisions in the codicil are contrary to the provisions of that act (MCLA §§ 555.52, 555.63).*

7. Trusts—Capital Gains—Taxation—Corpus—Income.

> *The assessment against a capital gain on a sale at a profit of trust assets, even though it be called a tax, amounts, in reality, to a deduction from that gain in the amount of the governmental exaction and would come out of corpus of the trust assets and not out of income.*

8. Wills—Construction—Intent—Time—Statutes.

> *A testator's intent is what the words employed in his will meant at the time of his death and it is not competent for the legislature to change his will in that respect by statutory amendment adopted after his death.*

9. Wills—Trusts—Vested Rights—Principal and Income— Statutes.

> *A statute enacted after the death of a testatrix could not in any way change or affect a substantive right of remaindermen under her will and codicil which vested at the time of her death, namely, to have charges for taxes and incidental expenses of a trust created in the will and codicil made against income, not the principal.*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and J. H. Gillis and Danhof, JJ., affirming Wayne, John M. Wise, J. Submitted November 10, 1970. (No. 23 October Term 1970, Docket No. 52,741.) Decided April 6, 1971.

20 Mich App 485 affirmed.

Complaint by Russell H. Donovan against National Bank of Detroit, trustee, and Margaret Morang, and others, remaindermen, for a declaratory judgment that the taxes and incidental expenses of a trust must be apportioned between the trust income and principal. Declaratory judgment for plaintiff. Defendants Margaret Morang and others appealed to the Court of Appeals. Affirmed. Defendants Margaret Morang and others appeal. Affirmed.

*McClintock, Fulton, Donovan & Waterman* (by *Frederic W. Heller*), for plaintiff.

*Dickinson, Wright, McKean & Cudlip* (by *Douglas D. Roche*), for defendant National Bank of Detroit.

*Riseman, Lemke & Piotrowski,* for defendants Margaret Morang, Judith H. Morang, and Margaret M. Wonser.

T. E. BRENNAN, J. I cannot agree with our distinguished brother and former colleague.

He holds that the language of the codicil was clear and unambiguous. Then he cites *Industrial Trust Company* v. *Winslow* (1938), 60 RI 61 (197 A 185), and *United States Trust Company of New York* v. *Jones* (1953), 414 Ill 265 (111 NE2d 144), for the proposition that the words "all taxes", though clear

and unambiguous, do not include capital gains taxes because the result of such an interpretation would be "incongruous."

The language used by the settlors in both the *Winslow* and *Jones* cases was stronger than the phrase "all taxes" used by the testatrix in this litigation,[1] yet in both of those cases, the courts held the language to be ambiguous, and looked for other indicia in the trust instruments to determine the settlor's intent.

It cannot be of much guidance to trustees for this Court to hold that the phrase "all taxes" clearly and unambiguously includes some taxes and clearly and unambiguously excludes others.

Nor is my brother's characterization of a capital gains tax as a "governmental exaction" a useful device for distinguishing between includable and excludable taxes. In the *Jones* case, the settlor used the term "other governmental charges." Still, the court there held the capital gains tax excluded.

Appellees argue that the will is silent on the fund out of which the trustee is directed to pay taxes and expenses. Appellant points out that the direction to pay taxes and expenses is inserted between the direction to collect income and the command to

---

[1] " 'Article Sixth. Out of the income of the principal of the trust estate the Trustee shall pay all taxes, assessments or other governmental charges which it may be required to pay or to retain because or in respect of any part of the principal of the trust estate or the income therefrom or the interest of the Trustee therein or the interest of any beneficiary or other person therein, under any present or future law of the United States, or of any state, county, municipality, or other taxing authority therein, any and all such taxes, assessments or other governmental charges lawfully imposed being charged as a lien upon the said income, and in the case of deficiency of said income upon the principal of the trust estate.' " *United States Trust Company of New York* v. *Jones, supra*, p 267.

" ' * * * and to pay from said income all taxes, assessments, ordinary and extraordinary, and other expenses and charges incident to the care, management and protection of said trust estate, including a reasonable compensation to said trustees.' " *Industrial Trust Company* v. *Winslow, supra*, p 65.

pay net income; and claims that this positioning of the tax and expense directive evidences an intent that these things be paid out of gross income, and that their payment will leave net income to be distributed.

Appellant's position has some merit. Certainly plaintiff would not claim that he is entitled to a distribution of gross income, with no expenses deducted therefrom.

But the conclusion that the testatrix intended some taxes and some expenses to be deducted from income does not negative the possibility that other taxes and other expenses were intended to be charged to principal.

The real difficulty is that we are not so much trying to find the testatrix's actual intent, as we are trying to opine as to what the testatrix's intent would have been had she ever thought about the problem.

The commissioners on Uniform State Laws have stated the problem in their prefatory note to the 1962 act, adopted by Michigan in 1965:

"Request for revision of the old Act came from several sources, particularly from *trustees* who found it difficult to administer trusts under the older Act due to the development of new forms of investment property for trustees. This new development was especially true in the field of corporate distributions and also in the holding of mineral resources as a trust investment. The revised Act provides as did the original Act that the settlor's intent is the guiding principle which should control the disposition of all receipts. *But settlors have not always foreseen the multitude of problems which may have to be faced and even draftsmen have found it difficult to foresee all the possible kinds of receipts and disbursements.* It is important, therefore, to set forth some clear and uniform standards to as-

sist those to whom the power of decision has been committed, that is, the trustees, and this Act attempts to provide these standards." (Emphasis added.)

The commissioners concluded:

"The Act, therefore, sets forth simple and workable rules of administration which are believed to be consistent with the wishes of settlors upon the subject treated unless the settlor *specifically provides* for a different treatment in his own trust instrument." (Emphasis added.) Vol 9B ULA 569-571.

I conclude that the language in the trust instrument here involved does not contain a clear expression of contrary intent, such as to remove this trust from the operation of the Uniform Act.

### RETROACTIVITY

My brother has concluded his opinion with language suggesting that the appellants here were possessed of some vested right as of the date of the testatrix's death, which right cannot be taken away by the subsequently adopted Uniform Act.

Such reasoning begs the question. If it be true that the trust is ambiguous upon the question of apportionment, then it was ambiguous on the date of the testatrix's death.

Prior to the adoption of the Revised Uniform Principal and Income Act, there was no appellate decision in Michigan establishing any general rule with respect to the apportionment of taxes and expenses as between principal and income accounts.

ALR Annotations dealing with compensation of trustees, 117 ALR 1154; attorney fees and court costs, 124 ALR 1183; taxes, 17 ALR 1384, 94 ALR 311; repairs, 101 ALR 681; insurance, 47 ALR 519,

are helpful, but demonstrate two major propositions:

(1) That the intention of the settlor, while theoretically controlling is rarely so clearly expressed as to be dispositive,

(2) Courts of equity have jurisdiction to determine the apportionment of expenses as the equities may appear.

Generally, courts which have considered particular expenses and expenditures have directed that the ordinary expenses of the administration of a trust be charged against income, and extraordinary expenses which benefit the remainderman be charged against the principal.

Since Michigan had no case law on the subject, prior to the adoption of the Uniform Act, it cannot be said that the Uniform Act abrogated our equity jurisprudence; nor ousted any Michigan beneficiary from vested rights.

Being free as chancellors to adopt for Michigan that view which most nearly effectuates the 'presumed intent of the settlor, and which at the same time, makes convenient and reasonably certain the administration of trusts in our state, we should hold in this case that taxes and expenses of the administration of the instant trust be apportioned between income and principal in accordance with the specific provisions of Act 340, PA 1965.

ADAMS and T. G. KAVANAGH, JJ., concurred with T. E. BRENNAN, J.

T. M. KAVANAGH, C. J., concurred in the result.

BLACK, J. (*dissenting*). This case was assigned to former Justice JOHN R. DETHMERS. Before leaving the Court he prepared and submitted to us

the ensuing opinion of the presented issue. I adopt that opinion and submit it in accordance with the mandate of § 6 of the Judicial Article.

DETHMERS, J. The question in this cause is whether the allocation of taxes and expenses of a trust estate between the principal and income shall be in accordance with what plaintiff says the terms of the will creating the trust clearly provide or with the provisions of the Michigan principal and income act, PA 1965, No 340, § 2(a)(2) and § 13 (MCLA § 555.52 and § 555.63 [Stat Ann 1969 Cum Supp § 26.79(2) and § 26.79(13)]).

On March 5, 1963, testatrix executed a codicil to her last will and testament wherein she bequeathed the residue of her estate in trust to defendant National Bank of Detroit. The pertinent part of the trust embodied in the codicil reads as follows:

"*Second*  *  *  *  Said trustee shall hold, manage and control said trust estate for the following uses and purposes.

"*A*. The Trustee shall collect the income from the property comprising the trust estate, pay all taxes and incidental expenses of the trust, and shall remit the net income derived therefrom, in monthly or other convenient installments, to my grandson, Russell Donovan.  *  *  * .

"*B*. Upon the death of my grandson, the trust shall terminate and the Trustee shall distribute the trust estate in fee to Margaret Morang, if she shall then be living, and if she shall not then be living, the trust estate shall be distributed in equal shares in fee to her daughters, Margaret M. Wonser and Judith H. Morang  *  *  * .

"*C*. I hereby authorize and empower the Trustee, in its sole and absolute discretion, at any time and from time to time, to disburse from the principal of the trust estate such amounts as it may deem advisable to provide adequately and properly for

any emergency or extraordinary expense of my said grandson, his spouse and children, including, but not by way of limitation, expenses incurred by reason of illness, disability and education.  In determining the amount of principal to be so disbursed, the Trustee shall take into consideration any other income or property which my said grandson may have from any other source, and the Trustee's discretion shall be conclusive as to the advisability of any such disbursements, and the same shall not be questioned by anyone.  For all sums so disbursed, the Trustee shall have full acquittance.

"*D*. The trust shall be administered under and in accordance with the laws of the State of Michigan, and investment of trust funds shall be limited to types of property approved for investment by fiduciaries under the laws of the said state.  Subject only to the foregoing, the Trustee shall have the continuing, absolute, discretionary power to deal with the trust estate as freely as I might in the handling of my own affairs, and no person dealing with the Trustee shall be required to inquire into the propriety of any of its actions."

Plaintiff, the income beneficiary of this trust, is the grandson of testatrix.  The individual defendants are the remaindermen, none related by blood to testatrix.  The trust is being administered by the defendant bank as trustee.

Testatrix died on March 30, 1964.  Her will was admitted to probate one week later.  The above cited Michigan principal and income act was enacted in 1965 and became effective on January 1, 1966.

Pertinent portions of the statute read as follows:

"(a) A trust shall be administered with due regard to the respective interests of income beneficiaries and remaindermen.  A trust is so administered with respect to the allocation of receipts and expenditures if a receipt is credited or an expendi-

ture is charged to income or principal or partly to each

"(1) In accordance with the terms of the trust instrument, notwithstanding contrary provisions of this act;

"(2) In the absence of any contrary terms of the trust instrument, in accordance with the provisions of this act; or

"(3) If neither of the preceding rules of administration is applicable, in accordance with what is reasonable and equitable in view of the interests of those entitled to income as well as of those entitled to principal, and in view of the manner in which men of ordinary prudence, discretion and judgment would act in the management of their own affairs.

"(b) If the trust instrument gives the trustee discretion in crediting a receipt or charging an expenditure to income or principal or partly to each, no inference of imprudence or partiality arises from the fact that the trustee has made an allocation contrary to a provision of this act."

Plaintiff filed a complaint in circuit court seeking a declaratory decree and interpretation of the meaning of Paragraph *Second A* of the codicil which directs that the trustee "shall collect the income from the property comprising the trust estate, pay all taxes and incidental expenses of the trust, and shall remit the net income derived therefrom, in monthly or other convenient installments, to my grandson, * * * ".

It will be noted that the statute provides that a trust shall be administered "(1) In accordance with the terms of the trust instrument, notwithstanding contrary provisions of the act; (2) In the absence of any contrary terms of the trust instrument, in accordance with the provisions of this act." The provisions of the act, if applicable here, provide in

§ 13 as to the allocation of taxes and expenses of the trust, that certain of the charges shall be made against income and some against principal, specifying them.

Plaintiff's contention has been that the language of Paragraph *Second A* of the codicil is ambiguous, that it does not specify how the taxes and expenses are to be apportioned, or how the net income is to be computed to be remitted to the grandson, and that, therefore, the codicil did not contain any provision regarding apportionment of taxes or expenses which is contrary to the provisions of the act and, consequently, under § 2(a)(2) of the act, the provisions of § 13 thereof as to apportionment do apply here. This view the trial court adopted, buttressing it with the observation that the language of the codicil as a whole, and particularly that of Paragraph *Second C,* authorizing the trustee to invade the corpus for the benefit of the grandson when the trustee deems necessary or advisable, shows that the grandson was the favored beneficiary in testatrix's mind and intent, and therefore the charge of taxes and expenses should not be held to have been intended by the testatrix to come entirely from income. Judgment entered for plaintiff.

On appeal by defendants the Court of Appeals affirmed, and, on leave granted on defendants' application here, the problem now confronts us in this Court.

In answer to the position that the language of the codicil shows that the grandson is to be the favored beneficiary, it may as well be said that the testatrix appeared well able to employ apt language persuasive to the trial court of such preference and, accordingly, would not have been caught short for express words to that effect as to taxes and expenses. Instead, the codicil directs the trustee to (1) "collect

the income from the property comprising the trust estate", (2) pay all taxes and incidental expenses of the trust, and (3) remit the net income derived therefrom to plaintiff. This language would seem to make it plain enough what the trustee was to do about collecting, paying and remitting, without need of a crutch in the form of reading into the codicil any conclusion as to whom the testatrix favored and loved the most. And so, defendants say that the trustee is clearly directed by testatrix to pay all the taxes and mentioned expenses from the income. This being contrary to the provisions of the act, defendants say it follows that the terms of the act shall not apply and that the charges shall all be made against income, as they say the codicil directs. We think this is correct.

Plaintiff urges that if all taxes are to be deducted from income, then in case of sale at a profit of trust assets, the capital gains tax would also be charged against income, with the incongruous result that the remaindermen's benefit from enhancement of the value of the corpus would cause detriment to the income beneficiary by reason of the charge of that tax against his income. This, we say, does not follow. It cannot be so. Even though the assessment against a capital gain be called a tax, it amounts, in reality, to a deduction, in the amount of the governmental exaction, from that gain. Thus it would come, not out of income but out of the corpus. See *United States Trust Company of New York* v. *Jones* (1953), 414 Ill 265 (111 NE2d 144); *Industrial Trust Company* v. *Winslow* (1938), 60 RI 61 (197 A 185).

In the case of *In re Graham Estate* (1967), 379 Mich 224, this Court said:

"The intent of the testator must be held to have been what the words employed in his will meant at

the time of his death.  It was not competent for the legislature to change his will in that respect by statutory amendment adopted after his death."

Hence, it ought not to be suggested that as to a codicil to a will executed on March 5, 1963, by a testatrix who died on March 30, 1964, a subsequent statute, enacted in 1965, which became effective on January 1, 1966, could in any way change or affect a substantive right of defendants under the will and codicil, which vested at time of the testatrix's death, namely, the right to have the mentioned charges made against the income, not the principal.

Reversed and remanded to the circuit court for entry of judgment in accord with this opinion. Costs to defendants-appellants.

SWAINSON and WILLIAMS, JJ., did not sit in this case.